Good afternoon, and may it please the court, I am Patrick Smith. I'm happy to comment on Jacob Rogers in this case. This case, I believe, gives rise to questions that are very typical in terms of the standard of review in the Ninth Circuit, but also factual issues that are quite unusual. In this case, I believe that there are completely three versions of the events here. There are the events that Jacob Rogers contends happened during this event, which were witnessed by a person behind him while he was driving down a highway in Orange County. The person behind him, the witness, indicated that, I just witnessed an Orange County bus try to run a car off the road. I had to slam on my brakes. The guy's going back and forth trying to run him off the road. This court did exclude that, correct? Yes, it did, Your Honor. You're referring to the 9-11 call? The 9-11 call. That's correct, and I think I've addressed that in the brief as to why I think it's admissible. Nevertheless, the appellant's version is identical to that witnessed. The defendant's version, Ernestito Torres, the bus driver, indicated that he was driving along and nothing happened, and that Mr. Rogers then came along and was aggressive towards him. And then I believe respectfully that the district judge here in this court came up with the third version about how it was just a negligent traffic event. Now, why are those facts important? It's because the facts of these cases are completely disputed, and therefore, the case needs to go forward. We've got some people coming in. If you'd like to come up here, there's some chairs along the sides. As far as the court's concerned, you're welcome to use them. We may as well be practical here so you can see the things. Thanks for your patience, counsel. He'll get your time back. Yeah, absolutely. Thank you. Anybody else in the back that needs to come up or we all set? Very well. Thank you, counsel. Please proceed. And so there are genuine issues of material fact, but I do understand that the district judge made a legal ruling in this case. And I think for the benefit of the court here, there were three separate legal events that occurred here. The first event was the operation of the bus by the defendant in this case. I'm sorry to interrupt, but would you clarify what your understanding is on the factual scenario, which we assume is most favorable to your client? There was the shifting of the bus into the lane, and then it comes to a stop. They both come to a stop at a stop signal. And what's confusing to me is the bus didn't make contact when it was changing lane, but somehow your client's car wound up in front of the bus, and the bus inched forward and came in contact with Mr. Rogers' car. Is that correct? That's correct, Your Honor. The factual events were that he was driving down the road, and the bus tried to run him off the road. He was able to escape that and wind up on the median side. Then he pulled ahead, and the bus driver then reached out his window and yelled at him words to the effect that, this is my road, stay off my road. And he turned the bus deliberately into Mr. Rogers at the stop sign. So that's the second factual event. And that essentially comprises the first legal event, and that was the claim for excessive force in this case. And the claim for excessive force went before the court on the summary judgment issue. Now, just to summarize, the two other legal events in this case were then the unlawful arrest of Mr. Rogers for the events that he claims were falsified by the bus driver, and secondly, the malicious prosecution. If this were an ordinary traffic accident case, I would understand your argument more. But the way you postured this case in terms of excessive force and an unlawful arrest, you have some legal impediments that I don't think have even been addressed here. So you've been taking the facts as you portray them. Under the unlawful arrest claim, the fact is that the vehicle code 231110A says that it's a misdemeanor to throw any substance of the vehicle on a highway. Your client admitted to doing that. So there's your probable cause right there, and you can't get an unlawful arrest claim if there's probable cause, can you? You can under this case. How? Because the probable cause that was addressed in this report, and what Your Honor is referring to, is the probable cause of the police officer, from his perspective. I would not dispute that the police officer had probable cause to make the arrest. But this was a citizen's arrest, as I understand it, and Mr. Torres made the citizen's arrest based upon the fact that he was hit, if I understand it correctly, by something that your client had thrown hitting him in the head. Well, it's my understanding there's a dispute as to whether it was a citizen's arrest, that the police officer would have made the arrest because, by throwing the can, that it could have been felony. But be that as it may, I understand what the court is saying. The issue, however, is from the perspective, because this claim is against the OCTA's bus driver, acting under color of law to make that arrest. Well, but he wasn't, didn't this occur after he was off duty? No. When did it occur? It occurred the entire time he was on duty. In fact, after he pulled over, he had a supervisor come. He was connected with his duties the entire time, and he was on duty the entire time in the bus. But are you saying that he was acting under color of law as a bus driver? Is that your position? Absolutely, Your Honor. Because he was, by operating as a bus driver, he is given the power of the government to operate this 60-foot-long, several-ton bus on a highway. And if he uses it as a weapon on the highway, which is in the facts most likely favorable to the plaintiff, that would be a civil rights violation under 1983,  You do agree that if you are incorrect as a matter of law, that he is not operating under color of law, or if there's no probable cause, you have no cause of action in this setting. Is that correct? Well, I agree that color of law is a necessary element of Section 1983, yes. And I think that brings us to the point of the two other legal events, the excessive force, and then the other two events, the unlawful arrest and the malicious prosecution. Because the district court in this case decided that it was the intent, what would look to the intent of the officer, excuse me, the intent of the bus driver at the time of making the arrest and the false, malicious prosecution. Didn't the district court do that, though? Because under the Fourth Amendment, in order for your claim to be liable, the bus driver had to be performing either an investigating or an administrating function. And I think that's, yes, and that's where I think Atzin, which is the case of the district court, was incorrect, and I'll tell the court why. And that is because if we look at the intent of the person, whether it's an administrative or some sort of legal inquiry to violate the Fourth Amendment, that doesn't cover all Section 1983 or Fourth Amendment violations. For example, if a policeman or a government agent, a policeman, exercises some misconduct towards a person, for example, a sexual assault on a person, a citizen, that has no legitimate law enforcement purpose whatsoever. The officer had no intent whatsoever to violate the Fourth Amendment, to do a search or a seizure pursuant to his duties. It was only for his personal gratification, presumably. In this, that doesn't cover anything. Atzin, I shouldn't ask you to save any time, but you've only got a minute and 23 seconds left. Do you want to save any time for rebuttal? I would like to save the time. He has too many. Thank you. I would like to save the time. I'd like to ask a question in the extra minute, which is on the substantive due process claim. What is your evidence that the bus driver intended to run your client off the road? There's two items of evidence. One is we can't open someone's mind to find out their intents. We look at their actions and their words. The actions as witnessed from behind that he was intentionally trying to run the bus driver. You don't get that evidence in what happened. Then you have the statement by the bus driver, leaning out the window, yelling at Mr. Rogers, saying, This is my lane, my road. I can do whatever I want, or words to that effect. And that shows his intent and his deliberate intent and his deliberate indifference towards the safety. Did the time elapse between the time he moved over and tried to run him off the road, and then he drove the bus into your car, Mr. Rogers' car? It was immediately thereafter. It was so unfolded in how many minutes? If I recall correctly, it was within two or three minutes. And he had time to deliberate during that time? With the bus driver, absolutely. He pulled. What happened was he engaged in this conduct. Then they pulled up to the light, and he stopped without any cars in front of him, he being the bus driver. So he could have pulled forward. Instead, he went adjacent to the plaintiff's car, the impellent's car, and then deliberately turned into him in essentially an act of road rage. Thank you, counsel. We'll give you some time to read, but before we hear from the opposing counsel, we've got some more folks in the back. There are some chairs along here in the front. If you want to come in and find a place, you're welcome to do so before counsel begins her response here. Just give us a minute, if you will, counsel. If you will, just kind of move up to the front there. There are some seats over here on the side as well you're welcome to use. There are also some chairs up here you're welcome to use. I see they're quite comfortable, so... We suggest you have to argue with the case. Anybody else want to come up in the back? Now's your chance, because we're going to turn it over to counsel. All right, well, counsel, if you will. Counsel, please proceed. Thank you very much, your honors. Good afternoon. May the peace of the court. Lois Boback for appellee, Nestor Torres. First, I'd like to thank the court for coming down and having oral argument in Santa Ana. It's very nice to see the court down here, and we appreciate your presence. Thank you. With regard to the wrongful arrest claim, I think the court is correct that there are basically two elements. One, Mr. Torres had to allege facts sufficient to establish that Mr. Torres was acting within the course and scope of his authority under color of state law. And second, if there was probable cause, that negates any Fourth Amendment claim as a matter of law. I think the distinction... Counsel referenced police officers taking action that might be unconstitutional. I think there's a significant distinction between what police officers might do and what a bus driver might do. And the distinction comes down to the authority that is granted to those respective state employees by law and the purpose for which that authority is granted. So police officers have authority under state law to use force, and they're allowed to use that force to have some control over all of us. Bus drivers have very limited authority. They have the authority to drive a bus for the sole purpose of transporting passengers from one location to another location along a fixed route. Bus drivers don't have any state-conferred authority to use force against other drivers, or to control other drivers in any way, or to enforce driving regulations. So you would agree, then, if his facts are true, the bus driver violated his duties by driving his bus, edging over and forcing Mr. Rogers' car off the road, and then aggravated it by turning the bus into Mr. Rogers' car when they were stopped at a signal. If that happened, I would concede that it was possibly a state tort, but it's not a constitutional violation. It doesn't rise to the level of a Fourth or Fourteenth Amendment violation. Yes. A couple of reasons, Your Honor. First of all, the facts don't reflect that that's what happened. Mr. Rogers testified in deposition, and it's uncontradicted, that at the time that the bus was changing into the lane that Mr. Rogers at the time occupied, he moved slowly and methodically. There's no evidence that he turned his wheel and deliberately drove into Mr. Rogers. It was a slow, methodical movement. But that's why I mentioned turning the bus into him when they were stopped at the stop sign. There's also no evidence that he turned the bus into him when they were turned at the stop sign. Both Mr. Rogers and Mrs. Rogers testified in deposition that at the time they were stopped at the red light, the bus slowly inched toward the Rogers' vehicle. Mrs. Rogers said that he did not turn his wheel, he did not turn his steering wheel, and that he didn't put his foot on the gas. So... Well, how did he come in contact with the car? I don't think that there's any evidence that he actually did come in contact with the car. There's evidence that was discovered the following day, after the car was in a hotel parking lot overnight, that there was a very small scratch in the paint that appears, when you look at the photograph, to go from front to back. So if the bus is moving forward, it couldn't have caused the damage that's shown in the photograph. But Mr. Rogers admitted that nobody heard, nobody saw, nobody felt any impact between the two vehicles. And Mr. Rogers admitted in deposition that that scratch could have come from some other source. So... And in any event, I gather your position is that that in no way shocks the conscience of... Exactly. It happens. Unfortunately, it happens every day. It probably happened to most of us on our commute to work today, where we're merging into traffic and somebody didn't want to let us in. And so they move over and we have to either slow down to let them go ahead of us, or we have to go on a shoulder and get around them. I think that's a little different if you have somebody entrusted with a 60-foot-long bus and uses it as a disciplinary tool. So it comes back, it seems to me, it's arguable, it comes back to whether or not the bus driver can be shown to have deliberately used the bus in that aggressive manner. And I suppose it would be for the jury to decide whether they were shocked under those rather unique circumstances. I think that, first of all, the evidence that the bus driver moved slowly and methodically is contrary to the implication that plaintiffs want to draw that he moved in an aggressive manner. He was moving slowly. He wasn't moving in an aggressive manner. There's no admissible testimony that he was moving aggressively. And if I could say one other response on that particular point. The Supreme Court has cautioned that the 14th Amendment substantive due process standards shouldn't be expanded beyond the scope of where it is. There is no case law that would have put a bus driver on notice under these circumstances that he could face liability under the federal constitution. Perhaps he could face tort liability under state law. Perhaps if he violated a state law, he could be held criminally responsible. But there's simply no case law that has construed the substantive due process provision of the 14th Amendment as broadly as the plaintiffs are trying to do so in this case. Are you invoking qualified immunity or are you just saying there's no basis on which to find constitutional violation? Both. There's no basis to establish a substantive due process violation because Mr. Torres wasn't acting under color of state law. His conduct was not so outrageous that it shocks the conscience of modern society. And even if there were tribal issues on those two facts, then he's entitled to qualified immunity because there's no established case law. Is the shocks of conscience standard a question for the court or a question for the jury? In other words, is it a legal or a factual question? When the underlying facts are undisputed, it's a question of law for the court. And here, notwithstanding the position that appellant has taken, the district court adopted Mr. Rogers' version of the facts in both ruling on the motion to dismiss and in ruling on the summary judgment motion. The district court accepted the facts as stated in the defendant's separate statement of undisputed material facts, but those facts were all based on Mr. Rogers' testimony or Mrs. Rogers' testimony. So in accepting the way that the defendants postured the facts, she was in fact accepting the plaintiff's version of the facts because defendants did that for purposes of their motion for summary judgment. So she's resolving it as a question of law? Well, she resolved the substantive due process both as a question of law and she found that qualified immunity would apply because there's no established case law. What's her standard? It's de novo. So the court, you could determine both as a matter of law that there's no substantive due process violation, which is the first prong of qualified immunity, or that there's no established case law, the second prong. On the substantive due process issue, the only case that I saw that was anything close like it was a district court case report, is that your finding as well? Is there a federal appellate case that deals with facts, anything like this, where the shocking-to-conscience concept was the hindrance? I think there's actually a very good case out of the Tenth Circuit, and that's Williams v. Barney, 519 F. 3rd 1216. It's a 2008 Tenth Circuit case. That's a case that involved a business license inspector who went into a business to determine whether or not they had a business license, which was the limit of his authority that had been conferred by the city. He questioned the business owner as to whether or not they had a license, got upset at the business owner's answer, got into a verbal altercation, and actually hit the business owner and his partner. They brought 14th Amendment claims against the business license inspector, and the Tenth Circuit held that he was not acting within the undercutter of law because he didn't have the legal authority to use any force to perform his job functions, and that it didn't shock the conscience. That it could be a state torrent, but that it wouldn't be a constitutional violation. Thank you very much, counsel, for your argument.  We'll hear a brief rebuttal, maybe a couple of minutes, since the court was asking questions of your counsel, so two minutes. Thank you, Your Honor. The first thing I'd like to say is that the facts are disputed with regard to the substantive due process claim, and when counsel indicates that the district court decided the facts in favor of Mr. Rogers, we can read from the court, at the Excerpt of Rex's page 37, where the court says, There is no evidence in the record that Torres intended to injure the Rogers family. While unsafe driving can certainly be dangerous, it occurs every day on the busy streets of Southern California, Torres's traffic infractions simply do not rise to the level of conscious shocking conduct. Now, with regard to that, the court resolved the claim against Mr. Rogers in terms of the intent and using the bus. Now, I would also indicate to the court, specifically, that with regard to the shocking, the conscious standard, that I think that the moving the bus in the manner towards the Rogers car, which also contained their one-year-old child in backseat, incidentally, when the bus is moving slowly, that is the equivalent to holding your fist up. When the bus driver is out the window, moving the bus slowly, saying, this is my lane, get off it. So he's essentially holding his fist up, except it's a several-ton, 60-foot-long bus, moving toward him in a threatening manner. Do you have any case law that you would cite, too, where a federal appellate court has found incomparable facts that the conscious is shocked, basically? My research has not found an appellate case. The Hamill case out of Oregon, specifically. That's your case, right? Yes. That one was not helpful to you, was it? Oh, it's very helpful, because in that case, they made factual findings that the bus driver had no intent. When she ran over the people, it was because the bar on the bus blocked her view, and it was negligent, unintentional. The court specifically said, had she deliberately engaged in that conduct, it would have been a substantive due process violation. All right. We regret that your time is up. For all of you who are here as witnesses, one of the things about oral argument is there are time limits. And every lawyer who ever argues a case wishes that he or she had more time. Four minutes. Four minutes. Good point, good point. But in any event, we appreciate the argument. Both counsel, the case just argued is submitted. Thank you very much.
judges: Fisher, M. Smith, Owens